# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

DONALD E. JOHNSON,                    )
                                       )
      Plaintiff,                    )
                                       )
   v.                                 )          No. 4:09CV689 AGF
                                       )
RONALD C. NEIMAN, et al.,             )
                                       )
      Defendants.                   )

## MEMORANDUM AND ORDER

Plaintiff, a prisoner with a history of chronic pain resulting from major trauma, brought this suit against twenty individuals as well as Correctional Medical Services, Inc., and the Missouri Department of Corrections for alleged deliberate indifference to his serious medical needs, violations of the Americans with Disabilities Act, conspiracy, and various state law claims. In three separate motions, Defendants have moved for summary judgment. After reviewing the briefs and the evidence, the Court finds that Defendants are entitled to summary judgment on each of Plaintiff's claims.

### Standard

This Court must grant summary judgment if, based upon the pleadings, admissions, depositions, and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 863 (1982). The moving party must initially demonstrate the

absence of an issue for trial. <u>Celotex Corp.</u>, 477 U.S. at 323. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. <u>Board of Educ. v. Pico</u>, 457 U.S. at 863. Nevertheless, once a motion is properly made and supported, the non-moving party may not rest upon the allegations in his pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 257 (1986) (citing Fed. R. Civ. P. 56(e)). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce any proof to establish an element essential to the party's case and upon which the party will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322-24.

## Background

A.    <u>Plaintiff's History</u>

In 1983 Plaintiff was severely injured when he fell eight stories from a grain silo in a job-related accident. Plaintiff's leg was broken in five places, several of his vertebrae were fractured, and one of his heels was crushed. As a result of his injuries, Plaintiff underwent multiple surgeries in which steel screws and a plate were placed in his leg and rods were placed in his spine. In 1988 an administrative law judge found that Plaintiff was disabled under the Social Security Act. Before entering prison, Plaintiff was under the care of Dr.

Rachel A. Feinberg for chronic pain. Dr. Feinberg treated Plaintiff's pain with various medications, including a Duragesic patch and Vicodin.[1]

In May 2007 Plaintiff pled guilty to deviate sexual assault and was sentenced to seven years' imprisonment. Plaintiff entered the Missouri Department of Corrections ("MoDOC") on May 17, 2007. Plaintiff was transferred to Farmington Correctional Center ("FCC") on July 28, 2007. At all times relevant to the complaint, Plaintiff was incarcerated at FCC.

B.    The Defendants

1.    The "CMS Defendants"

Defendant Lois Cella is a registered nurse employed by Correctional Medical Services, Inc. ("CMS"), as Health Service Administrator at FCC. Cella's job duties include reviewing and responding to inmate medical Informal Resolution Requests ("IRRs") and inmate medical grievances. Defendant Brenda Burlbaw is a registered nurse employed by CMS as Director of Nursing at FCC. Burlbaw's job duties include responding to IRRs. Defendant Gary Campbell is a physician and independent medical consultant for CMS at FCC. During Plaintiff's incarceration, Defendant Beverly Morrison was a physician and independent medical consultant for CMS at FCC. Defendant Elizabeth Conley is the Regional Medical Director for CMS. Her office is in Jefferson City, Missouri. Conley's

---

[1]Plaintiff has attempted to introduce into evidence a report prepared by Dr. Feinberg for Plaintiff in unrelated litigation. Plaintiff did not disclose the report to Defendants during discovery. The Court will not consider the contents of the report for purposes of deciding the instant motion because it is irrelevant, because it has not been authenticated, and because Plaintiff failed to disclose it in discovery.

responsibilities include reviewing appeals relating to denials of treatment requests. Appeals are filed after medical grievances are denied. Conley was never Plaintiff's treating physician. Defendant Michael Sands was the Associate Regional Director of CMS. His office was in Jefferson City. Sands's responsibilities included determining whether medical requests from inmates met established criteria. Sands neither approved nor denied the requests, and the doctors at each facility had the ability to disregard his determinations. Defendant Jewel Cofield is the Regional Medical Director of Constituent Services for CMS. Her office is located in Jefferson City. Cofield hears inmate complaints after they have gone through the grievance process. Cofield was never Plaintiff's treating physician. Defendant CMS is a for-profit corporation that contracts to provide medical services for prisoners within MoDOC. Plaintiff sues the CMS Defendants in their individual capacities only.

In the complaint, Plaintiff generally alleges that the nurses and doctors of CMS refused to document his severe disabilities, failed to secure his pre-incarceration medical records and disability determination, and engaged in a persistent, widespread pattern of denying Plaintiff sufficient treatment and medication for his chronic pain and suffering. Specifically, Plaintiff contends that Defendants Cella, Burlbaw, Campbell, and Morrison engaged in a policy of denying him adequate medical care, failed to recognize his disabilities, failed to transfer him to a handicap-accessible or ADA-compliant institution, failed to secure his pre-incarceration medical records, falsified his medical files, conspired with one another to do the same, and retaliated against him for filing formal complaints. He also alleges that Campbell denied him pain medication, orthopedic shoes, a back brace, a

-4-

cane or other assistive device, and denied his request to be medically exempted from the Missouri Sexual Offender Treatment Program ("MoSOP"). Plaintiff alleges that Defendants Cofield, Conley, and Sands failed to conduct an independent investigation of his complaints and grievances, denied his pain medication requests, falsified state documents, and upheld the treating Defendants' unconstitutional actions. Plaintiff further contends that CMS promulgated policies, customs, and practices of failing to secure medical records and histories from primary care physicians, and that Defendants' actions were below professional norms, constituted deliberate indifference to his serious medical needs, and were grossly negligent. Plaintiff also alleges that Defendant Burlbaw's actions were a breach of fiduciary duty.

The CMS Defendants have collectively moved for summary judgment.

2.    The "MoDOC Defendants"

Defendant George Lombardi is the Director of MoDOC. Defendant Larry Crawford served as the Director of MoDOC from January 2005 through January 2009. Defendant Allen Luebbers was warden at Farmington Correctional Center ("FCC") from approximately September 1, 2002, through October 31, 2010. Defendant Joe Sampson is a deputy warden at FCC. Defendant Les Semar is a functional unit manager ("FUM") at FCC. At the time of the events alleged in the complaint, Defendant Patrick Kosanke was a Corrections Officer II ("COII"). Defendant Chris Neiman is an associate constituent services officer. Defendant Robby Skaggs is a Corrections Officer I at FCC. Defendant James Crump is an FUM and

an ADA site coordinator at FCC. Defendant Ed Courtney is a COII at FCC. Plaintiff sues the MoDOC Defendants in their individual capacities only.

In the complaint, Plaintiff alleges that the MoDOC Defendants were deliberately indifferent to his serious medical needs because they failed to recognize that he was disabled, and that Defendants violated his rights under the ADA by failing to have him excused from participation in the Missouri Sexual Offender Program ("MoSOP"). Plaintiff further asserts that Defendants engaged in a conspiracy to deprive him of his rights. In addition, Plaintiff alleges that Defendants Courtney and Skaggs denied him access to the law library.

The MoDOC Defendants have collectively moved for summary judgment.

3.      The "MHM Defendants"

Defendant Herb Yelverton is a psychologist who, at all times relevant to the complaint, was employed by Mental Health Management, Inc. ("MHM"), and performed the duties of Clinical Director for Mental Health for the Missouri Corrections System. Defendant Julie Motley is a licensed professional counselor who is employed by Mental Health Management and works with the Missouri Sexual Offender Program ("MoSOP"). Mental Health Management, who has not been named as a Defendant to this action, is a private entity that contracts with the State of Missouri to provide mental health care to prisoners. Plaintiff sues the MHM Defendants in their individual capacities only.

In the complaint, Plaintiff alleges that he was unable to participate in MoSOP because of his disability and that the MHM Defendants should have exempted him from MoSOP or transferred him to a disability-friendly institution. He further asserts that the MHM

Defendants were part of a conspiracy to cover up his disability by falsifying institutional documents.

The MHM Defendants have collectively moved for summary judgment.

C.    Findings of Fact

Upon entry into MoDOC, Plaintiff was evaluated for his complaints of back, right leg, left heel, and right shoulder pain.  On June 1, 2007, Plaintiff was diagnosed with having chronic back pain and was prescribed an analgesic balm, Naproxen, and Metamucil.  During July 2007 Plaintiff was also prescribed aspirin, Zocor, Atenolol, Ducosate, Zantac, Elavil, and Vistaril.  On July 25, 2007, Plaintiff refused to continue on Vistaril because he believed it was causing problems with his blood pressure medications.

Plaintiff arrived at FCC on July 28, 2007.  Plaintiff filed a Medical Service Request on August 6, 2007, complaining of being light-headed and weak.  Plaintiff filed additional Medical Service Requests on August 13 and 14, 2007, complaining that he could not bear weight on his left heel. And on August 14, 2007, Plaintiff presented at medical services complaining of left heel pain.  Plaintiff further complained that his shoes were too flat, and he requested orthotic footwear.  The nurse's notes indicate that Plaintiff informed medical staff that his left heel had been crushed twenty-four years before and that he could not bear weight on the heel.

Plaintiff filed two Medical Service Requests on August 17, 2007, complaining of left heel and back pain.  Plaintiff went to medical again on August 21, 2007, complaining of left heel pain.  During the assessment, Plaintiff told the nurse that the medications he was

receiving were not controlling his chronic pain. The nurse noted that Plaintiff had an appointment scheduled for August 23, 2007.

Plaintiff saw a doctor on August 23, 2007; the doctor gave Plaintiff a lay-in, or prescription, for crutches. On August 28, 2007, Dr. Rayford issued Plaintiff an oral lay-in for crutches for one month, no prolonged standing, no work, and no recreation. Later that day, Plaintiff returned one of the crutches because it bothered his shoulder.

Plaintiff filed Medical Service Requests on September 12, November 5, and November 13, 2007, complaining of low back pain, left heel pain, right leg and shoulder pain, and chronic pain.

Defendant Morrison evaluated Plaintiff on November 14, 2007. Morrison noted that Plaintiff suffered multiple injuries in 1984, that he requested to be enrolled in the pain clinic, and that he had thus far been seen several times by medical staff but that his pain had not been controlled. Morrison diagnosed Plaintiff with chronic pain in multiple areas. Morrison prescribed Naproxen and discontinued salsalate. Plaintiff advised Morrison that the Naproxen was ineffective and that he was "allergic" to it. By "allergic," Plaintiff meant that the medicine upset his stomach.

Plaintiff filed a Medical Service Request on November 28, 2007, complaining of chronic pain, low back pain, hip pain, heel pain, and shoulder pain.

Defendant Campbell evaluated Plaintiff on December 11, 2007. Plaintiff requested that Campbell put him in the infirmary and give him adequate medications to control his pain. Campbell noted that Plaintiff had a need for an orthotic device. Campbell's notes

stated "this patient may need stronger pain med program."  Campbell noted that he would recheck Plaintiff in one month and consider placing Plaintiff in the infirmary for pain control.  Plaintiff's Meloxicam was increased.

On December 31, 2007, Plaintiff returned some of the Meloxicam to medical, informing the nurse that it did not control his pain.

As of January 9, 2008, Plaintiff was still being treated with non-steroidal anti-inflammatory medications and was using a crutch to walk.  On that day, Plaintiff informed Defendant Campbell that his pain medications were not working and that he previously used a fentanyl patch and Vicodin to control his pain.  Plaintiff again requested to be placed in the infirmary.  Campbell explained to Plaintiff that he could not be treated with narcotics if he were housed in general population but that, at the same time, Plaintiff was required to stay in general population because he was enrolled in MoSOP.  Campbell reported that he had not received Plaintiff's past medical records.  Campbell noted that he would try to obtain a copy of Plaintiff's medical records.  Campbell did not prescribe any further treatment.

On January 10, 2008, Plaintiff executed an authorization of release of medical records from his outside treating physician, Dr. Feinberg.  Plaintiff attests he had authorized the release of the records on previous occasions.  Defendant Cella requested the records from Dr. Feinberg on January 11, 2008.

Campbell saw Plaintiff on January 14, 2008.  Campbell noted that he had discussed Plaintiff's case with Defendant Conley.  Campbell diagnosed Plaintiff with "chronic pain which required narcotics on the street."  Campbell noted that he would review Plaintiff's

outside medical records.  Campbell further note that Plaintiff was "a good candidate for buprenorphine [sublingual]" and also "gavapentin as a secondary med along with [NSAIDs]."

Cella received an invoice from Injury Specialists for Plaintiff's medical records on February 7, 2008.  Cella paid the invoice on March 21, 2008.

On March 25, 2008, Campbell reviewed Plaintiff's medical records from Dr. Feinberg.  Campbell noted that Plaintiff's pain had been controlled with the fentanyl patch and Vicodin, and he further noted that there was no evidence that Plaintiff had abused his medications.  He further noted that Plaintiff had problems sitting or standing for more than five minutes and that he was having trouble in MoSOP with being able to sit for three hours or more.  Campbell prescribed buprenorphine for Plaintiff.

Plaintiff complained that the buprenorphine made him sick, namely that he had chills, headaches, stomach pain, nausea, diarrhea, and back pain.

On April 19 or 20, 2008, an undissolved buprenorphine pill was found by prison staff on the floor of the yard.  Plaintiff was the only inmate at FCC taking the medication.  Plaintiff testified that he must have accidentally dropped the pill onto his clothing while self-administering it because his fingers were numb.  Plaintiff claims that the nurse handed his pills to him through the window without a medication cup, and he claims that the nurse would not assist him with placing the pills under his tongue.  He believes the pill fell off of his clothing on his way back to the housing unit.  On April 21, 2008, after interviewing Plaintiff, Campbell determined that Plaintiff was "cheeking" the drug and discontinued it.

Campbell further told Plaintiff he would not be given any other narcotics due to breach of trust.

On June 4, 2008, Plaintiff filed an IRR stating that he was being required to attend MoSOP classes even though it was causing him pain to do so. Plaintiff requested a deferral from the program. On June 16, 2008, Plaintiff filed a Medical Service Request complaining that he could not use stairs.

On June 11, 2008, Campbell informed Carlos Sampson, a clinical caseworker with MoSOP, that "there is no medical reason [Plaintiff] can not continue the MoSOP program."

On June 17, 2008, Plaintiff filed a Medical Service Request claiming that he was dragging his right leg because it was both numb and in pain. Plaintiff was seen by a nurse, who assessed him and noted that he had a doctor's appointment on June 18. Later that day, Plaintiff fell after experiencing a sharp pain in his left heel. Plaintiff was taken to medical in a wheelchair. Plaintiff complained that he was not receiving adequate medical care. The nurse informed Plaintiff he was receiving treatment.

Defendant Morrison evaluated Plaintiff after his fall. Morrison noted that Plaintiff was able to get out of the wheelchair, that he was able to flex and extend his legs, and that there was no evidence of neurological defects. Morrison found that the objective findings did not match Plaintiff's subjective complaint. Morrison determined that Plaintiff may need further evaluation by a psychiatrist.

After his evaluation, Morrison cleared him to return to his housing unit. Plaintiff testified that he had gotten on the floor of the medical unit because of leg pain. A

correctional officer ordered him to get off the floor and walk back to his housing unit. Plaintiff testified in his deposition that he could not imagine how he was going to walk back to his housing unit and do all of the other walking that would be required, such as walking to classes. Plaintiff told the officer that he could not return to the unit on foot because he was in pain. The officer issued Plaintiff a conduct violation for disobeying an order and took him to administrative segregation.

At some point, Plaintiff overheard Defendants Cella, Burlbaw, and Morrison talking about the fact that he had filed grievances against them. But Plaintiff never heard these Defendants agree to disregard his medical complaints in retaliation for filing the grievances.

On August 12, 2008, Plaintiff was placed on a full medical lay-in and was restricted to his cell. Plaintiff claims that Defendants Courtney and Skaggs refused to allow him to go to the law library on that day.

Morrison evaluated Plaintiff on September 11, 2008, for heel pain. Morrison noted that Plaintiff was using a crutch to ambulate but that he was not using it properly. Morrison gave Plaintiff a cane instead.

On September 30, 2008, and on December 19, 2008, Plaintiff refused to see Morrison on scheduled appointments.

Plaintiff alleges that Defendants Cella, Burlbaw, Conley, Sands, and Cofield denied his grievances. None of these Defendants ever evaluated Plaintiff's medical condition or provided him with treatment.

Defendant Morrison has submitted an affidavit in which she attests that she used her independent judgment in the course of her treatment of Plaintiff. She further attests that all of Plaintiff's medical treatment was reasonable and that his needs were adequately met.

Defendant Campbell has submitted an affidavit in which he attests that he used his independent judgment in the course of his treatment of Plaintiff. He further attests that all of Plaintiff's medical treatment was reasonable and that his needs were adequately met.

On December 20, 2007, Plaintiff was granted parole and a conditional release date of February 25, 2009, contingent on his completion of MoSOP. All sex offenders are required to complete MoSOP before being eligible for conditional release.

MoSOP is a therapeutic community treatment program that offers offenders both psychoeducational and process-oriented treatment groups for those who have been convicted of a sex crime. The main goal of the program is to provide the offenders with tools that may help the offender not to commit any further sex crimes after release from confinement.

Plaintiff completed Phase I of the program. Plaintiff entered Phase II of the program on March 28, 2008, and he was terminated from Phase II on June 24, 2008, for failure to learn and apply MoSOP concepts, for being non-receptive to feedback, for not taking responsibility for his actions, and for being absent due to confinement in disciplinary segregation. At that time, Defendant Yelverton was the director of MoSOP and Defendant Motley was a counselor.

During the course of his participation in Phase II, Plaintiff complained that he could not participate in the program because of his chronic pain. In order to participate in Phase

II, Plaintiff was required to move into new living quarters and participate in a therapeutic community. Going from his cell to classes required Plaintiff to climb a flight of stairs. Plaintiff complained that he could not sit in the chairs provided for very long, and he complained that he could not climb stairs to reach the program. Plaintiff requested a deferment from the program based on his physical condition.

Motley, Plaintiff's therapist, checked with medical staff to determine if Plaintiff's physical condition was preventing him from attending the meetings. Defendant Campbell informed Motley that he was physically able to attend them. The medical staff at FCC never ordered an elevator pass for Plaintiff, nor did any physician order a medical lay-in for stairs or to excuse Plaintiff from sitting in plastic chairs.

Motley did not have the authority to exempt Plaintiff from attending MoSOP for medical reasons or to transfer Plaintiff to a different institution. Motley accommodated Plaintiff by allowing him to stand from time to time or to shift in his chair.

A medical deferment must be completed and signed by a physician. Only offenders with severe medical conditions that prevent them from being physically present in MoSOP may qualify for a deferment.

A conditional release hearing was held on September 27, 2010. Conditional release was denied because Plaintiff had failed to complete MoSOP. A new conditional release hearing was scheduled for April 25, 2013.

MoDOC and its employees do not provide medical care or treatment to inmates. MoDOC contracts with CMS, and CMS contractors and employees provide medical care and

treatment to prisoners in MoDOC facilities. CMS medical personnel make all decisions regarding appropriate treatment for inmates using their own medical judgment. None of the MoDOC Defendants are physicians or have the background to make medical decisions. MoDOC employees rely on the judgments of physicians as to whether an inmate is physically capable of completing MoSOP.

To begin the grievance process at FCC, an inmate must first file an informal resolution request ("IRR"). MoDOC requires inmates to file IRRs within fifteen calendar days of the alleged incident.

**Discussion**

A.    <u>Access to Law Library</u>

Title 42 U.S.C. § 1997e(a) states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   The PLRA requires "that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, *including deadlines*, as a precondition to bringing suit." <u>Woodford v. Ngo</u>, 548 U.S. 81, 88 (2006) (emphasis added).

Plaintiff claims he was denied access to the law library on August 12, 2008, while he was on a full medical lay-in. Under MoDOC policy, Plaintiff was required to file any IRR on the issue no later than fifteen days from the alleged incident. Plaintiff, however, filed his

IRR on this issue on February 4, 2009, well after the time for doing so expired. As a result, this claim is barred as unexhausted.

B.    Medical Claims Under § 1983

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs because his physicians did not prescribe medicine for him that was strong enough to control his pain and because he was medically cleared to complete MoSOP even though he was physically unable to do so.

The CMS Defendants argue that they are entitled to summary judgment because Plaintiff has failed to establish that he was denied adequate medical care. The MoDOC Defendants argue that they are not responsible for providing medical care to inmates because such care is provided by CMS and its employees. These Defendants further argue that they are entitled to qualified immunity. The MHM Defendants argue that Plaintiff has failed to establish deliberate indifference and that they are entitled to qualified immunity.

1.    Defendants Have Demonstrated That They Provided Adequate Medical Care to Plaintiff

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999). "'Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to

respond to prisoner's serious medical needs. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'" Id. (quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Cambreros v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).

"In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240. Furthermore, "[w]here the complaint involves treatment of a prisoner's sophisticated medical condition, expert testimony is required to show proof of causation." Alberson v. Norris, 458 F.3d 762, 765-66 (8th Cir. 2007).

Defendants have introduced Plaintiff's medical records indicating that treatment was provided to Plaintiff. That is, he was prescribed non-steroidal anti-inflammatory drugs, such as Naproxen and Meloxicam. He was given crutches and a cane to help him walk. He was prescribed a narcotic, buprenorphine, until it was determined that he had abused it. He was prescribed several other drugs, such as aspirin, Zantac, an analgesic balm, Elavil, and Vistaril. And he was given a lay-in for no prolonged standing. Additionally, Campbell and Morrison have submitted their affidavits stating that they used their independent judgment in deciding Plaintiff's course of treatment, that the care Plaintiff received was reasonable, and that his needs were adequately met. Aside from his assertions, Plaintiff has not provided

any verifying evidence that the treatment Campbell and Morrison provided was inadequate. And Plaintiff has failed to introduce expert testimony showing that Defendants' alleged inadequate treatment caused his condition to worsen. In light of the medical records and Defendants Campbell and Morrison's affidavits, Plaintiff has failed to create a question of material fact that he was denied adequate medical care for his chronic pain and disabilities. Dulany, 132 F.3d at 1240.

Moreover, Plaintiff has not demonstrated that Defendants Cella, Burlbaw, Conley, Sands, or Cofield were directly involved in any violation of his Eighth Amendment rights. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where Plaintiff fails to allege that Defendant was personally involved in or directly responsible for the incidents that injured Plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits); George v. Smith, 507 F. 3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). These Defendants did not evaluate Plaintiff's medical condition and they did not provide him with or deny him access to medical care. And their participation in the grievance process did not contribute to any alleged violation.

Plaintiff has not introduced any evidence showing that the MoDOC or MHM Defendants attempted to interfere with his medical care. The record shows that these Defendants complied with the directives of Plaintiff's physicians.

Finally, Plaintiff's § 1983 claims against MoDOC fail as a matter of law because an agency exercising state power is not a "person" subject to a suit under § 1983.  E.g., Barket, Levy & Fine, Inc. V. St. Louis Thermal Energy Corp., 948 F.2d 1084, 1086 (8th Cir. 1991).

2.    Plaintiff's Participation in MoSOP Does not Establish a Violation of the Eighth Amendment

Plaintiff claims that Campbell violated his Eighth Amendment rights when he certified that Plaintiff was physically able to attend MoSOP classes.  Plaintiff also claims that Yelverton and Motley were aware of his disabilities, which included an inability to climb stairs or sit for long periods of time in plastic chairs without discomfort, and that they deliberately disregarded his disabilities by not exempting him from MoSOP or transferring him to a more accessible facility.

Campbell's physical evaluations of Plaintiff indicated that Plaintiff was able to sit and stand without difficulty, that he had a normal gait, and that he did not have any neurological defects.  Campbell based his determination that Plaintiff was able to attend MoSOP on his objective findings.  Plaintiff has failed to introduce any verifying evidence, other than his assertions, that he was physically unable to climb stairs or sit in chairs.  Moreover, MoSOP is a voluntary program and Campbell did not compel Plaintiff to attend the classes.

When Plaintiff told Motley that he was unable to participate in class because he was in too much pain she contacted the medical staff, who informed her that Plaintiff was capable of climbing stairs and sitting for long periods of time.  Motley and Yelverton, therefore, were not subjectively aware of a serious medical need requiring exemption of MoSOP.  Motley

and Yelverton, who are not medically trained, were entitled to rely on the advice of the prison doctors in this matter. Furthermore, Motley and Yelverton did not have the authority to exempt Plaintiff from MoSOP or to transfer him to another facility. As a result, Plaintiff has failed to create a triable issue of fact on his claim that his participation in MoSOP violated his rights under the Eighth Amendment.

### 3. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)). However, the defense of qualified immunity does not extend to private parties operating under contract for the government. See, e.g., Richardson v. McKnight, 521 U.S. 399, 404-412 (1997) (refusing to extend the defense of qualified immunity to a private prison guard, notwithstanding that prison guards directly employed by the government may have enjoyed such immunity from suit); Harrison v. Ash, 539 F.3d 510, 525 (6th Cir. 2008) (refusing to extend qualified immunity to nurses employed by CMS); Hinson v. Edmond, 192 F.3d 1342, 1345-47 (11th Cir. 1999) (refusing to extend qualified immunity to privately employed prison physician).

The MoDOC Defendants are entitled to qualified immunity because Plaintiff has failed to demonstrate a violation of a constitutional right. The MHM Defendants are not entitled to qualified immunity because they are not government officials.

C.     ADA Claims

Plaintiff alleges that Defendants violated his rights under Title II of the ADA because they failed to exempt him from MoSOP or transfer him to another facility.

The individual Defendants and CMS argue that Plaintiff's ADA claims fail as a matter of law because Title II of the ADA does not apply to them. MoDOC argues that it is protected by sovereign immunity.

Title II of the ADA applies to inmates in state prisons. See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 209-11 (1998). "To state a prima facie claim under [Title II of] the ADA, a Plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999); see 42 U.S.C. § 12132.

Title II of the ADA applies to "public entities." 42 U.S.C. § 12132. Under 42 U.S.C. § 12131(1), "The term 'public entity' means . . . any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government." The term "does not include individuals." Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (en banc). A private contractor does not become a "public entity" under Title II merely by contracting with a governmental entity to provide

governmental services.  <u>Green v. City of New York</u>, 465 F.3d 65, 79 (2nd Cir. 2006).  As a result, Title II of the ADA does not impose liability on any of the individual Defendants in their individual capacities or CMS.

The Eighth Circuit Court of Appeals has held that Congress's attempt to abrogate sovereign immunity for any damages suit brought under Title II of the ADA is unconstitutional.  <u>See</u> <u>Alsbrook</u>, 184 F.3d at 1009-10.  Subsequently, the United States Supreme Court held that Title II of the ADA abrogates the states' sovereign immunity in limited circumstances.  In <u>Tennessee v. Lane</u>, the Court held that Title II validly abrogates the states' sovereign immunity when "applie[d] to the class of cases implicating the fundamental right of access to the courts . . ." 541 U.S. 509, 533-34 (2004).  And in <u>United States v. Georgia</u>, the United States Supreme Court held that Title II of the ADA validly abrogates the states' sovereign immunity when the conduct alleged actually violates the Fourteenth Amendment.  546 U.S. 151, 159 (2006).

To determine whether Title II validly abrogates sovereign immunity in a given context, the Court must "begin [its] analysis by identifying the precise nature of the claims before [it]."  <u>Klingler v. Director, Dept. of Revenue, State of Mo.</u>, 455 F.3d 888, 893 (8th Cir. 2006).  "'[N]othing in our case law requires us to consider Title II, with its wide variety of applications, as an undifferentiated whole. Whatever might be said about Title II's other applications, the question presented in this case is . . . whether Congress has the power under § 5 [of the Fourteenth Amendment] to enforce the constitutional right of access to the courts.'"  <u>Id.</u> (quoting <u>Lane</u>, 541 U.S. at 530-31).

The basis for Plaintiff's ADA claim is that he was denied the opportunity to participate in MoSOP because he was physically unable to attend the classes. The Eighth Circuit Court of Appeals has held that inmates do not have a liberty interest in participating in MoSOP. <u>Jones v. Moore</u>, 996 F.2d 943, 945 (8th Cir. 1993). As a result, the Fourteenth Amendment was not violated, and MoDOC, as a state agency, is entitled to sovereign immunity in relation to Plaintiff's ADA claim.

D.     <u>Conspiracy</u>

Plaintiff claims that the CMS Defendants engaged in a conspiracy to deprive him of his medical needs in retaliation for filing grievances against Campbell and Morrison.

> To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.

<u>White v. McKinley</u>, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted).

Plaintiff's conspiracy claim fails because he has not introduced any evidence showing the existence of a conspiracy and because he has failed to prove the deprivation of a constitutional right. Plaintiff repeatedly asserts the existence of a conspiracy, but during his deposition he testified that he did not hear Defendants engaging in a conspiracy. Moreover, because he has failed to demonstrate that Defendants were deliberately indifferent to his serious medical needs, he cannot prevail on a conspiracy claim.

Additionally, Plaintiff accuses the CMS Defendants of "falsifying" his medical records as part of their alleged conspiracy. It is clear from Plaintiff's briefs that the alleged "false" material in Plaintiff's medical records was simply Campbell and Morrison's independent judgment of Plaintiff's medical conditions. Whenever Plaintiff disagreed with their judgment, he accuses them of creating "false" medical records. This fails to show that any of the material in the medical records is false.

E.    Retaliation

Plaintiff also claims that Defendants Morrison, Campbell, Cella, and Burlbaw retaliated against him on June 17, 2008, for filing grievances and had him placed in administrative segregation. However, none of these Defendants were present when the officer issued the conduct violation. And Plaintiff has not shown that these Defendants were directly responsible for his placement in administrative segregation. As a result, Plaintiff has failed to create a triable issue of fact on this issue.

F.    State Law Claims

Plaintiff also cursorily alleged gross negligence, breach of contract, and breach of fiduciary duty under state law. Because Plaintiff's federal claims will be dismissed, all remaining pendent state claims will be dismissed. See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); Hassett v. Lemay Bank & Trust Co.,851 F.2d 1127, 1130 (8th Cir. 1988) (where federal claims have been dismissed, district courts may decline jurisdiction over pendent state claims as a "matter of discretion").

For the above reasons, the Court finds that Defendants are entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motions for summary judgment [Docs. 203, 229, & 232] are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike reply to response to statement of material facts [Doc. 226] is **DENIED**.

A separate Judgment shall be filed with this Memorandum and Order.

Dated this 25th day of August, 2011.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE